UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| RENE M. MINER, | ) |
| Plaintiff, | ) No. CV-07-3069-CI |
| v. | ) ORDER GRANTING PLAINTIFF'S |
| | ) MOTION FOR SUMMARY JUDGMENT |
| MICHAEL J. ASTRUE, | ) AND REMANDING FOR AN |
| Commissioner of Social | ) IMMEDIATE AWARD OF BENEFITS |
| Security, | ) |
| Defendant. | ) |

BEFORE THE COURT are cross-Motions for Summary Judgment (Ct. Rec. 13, 15). Attorney D. James Tree represents Plaintiff; Assistant United States Attorney Frank A. Wilson and Special Assistant United States Attorney Nancy A. Milshalanie represent Defendant. The parties have consented to proceed before a magistrate judge. (Ct. Rec. 8.) After reviewing the administrative record and briefs filed by the parties, the court **GRANTS** Plaintiff's Motion for Summary Judgment (Ct. Rec. 13) and **REMANDS** for an immediate award of benefits. Defendant's Motion for Summary Judgment (Ct. Rec. 15) is **DENIED.**

**JURISDICTION**

On May 27, 2003, Plaintiff Rene Miner (Plaintiff) protectively filed an application for supplemental security income (SSI). (Tr.

21.) Plaintiff alleged disability due to lung disease, cancer, diabetes, and mental impairments (including attention deficit disorder), with an onset date of February 21, 2000. (Tr. 54-57, 73, 86, 168.) Benefits were denied initially and on reconsideration. (Tr. 45-52, 61-62.) Plaintiff requested a hearing before an administrative law judge (ALJ), which was held before ALJ Riley Atkins on September 21, 2006. (Tr. 478-510.) At the hearing, Plaintiff, who was represented by counsel, testified. The ALJ denied benefits and the Appeals Council denied review. (Tr. 6-9, 21-30.) The instant matter is before this court pursuant to 42 U.S.C. § 405(g).

**STATEMENT OF FACTS**

The facts of the case are set forth in detail in the transcript of proceedings, and are briefly summarized here. Plaintiff was 26 years old at onset and 33 at the time of the hearing. (Tr. 481.) It is unclear whether Plaintiff completed the ninth or the eleventh grade. (Tr. 92, 483.) Plaintiff has no past relevant work. (Tr. 25, 166.) The ALJ found Plaintiff disabled. (Tr. 21.) After performing analysis pursuant to *Bustamante v. Massanari*, 262 F.3d 949 (9th Cir. 2001), the ALJ determined that substance abuse is a contributing factor material to disability. Accordingly, Plaintiff was found not eligible for benefits. (Tr. 21.)

**SEQUENTIAL EVALUATION PROCESS**

The Social Security Act (the "Act") defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve

months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The Act also provides that a Plaintiff shall be determined to be under a disability only if any impairments are of such severity that a Plaintiff is not only unable to do previous work but cannot, considering Plaintiff's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy.  42 U.S.C. §§ 423 (d)(2)(A), 1382c(a)(3)(B).  Thus, the definition of disability consists of both medical and vocational components.  *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled.  20 C.F.R. §§ 404.520, 416.920.  Step one determines if the person is engaged in substantial gainful activities.  If so, benefits are denied.  20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I). If not, the decision maker proceeds to step two, which determines whether Plaintiff has a medically severe impairment or combination of impairments.  20 C.F.R. §§ 404. 1520(a)(4)(ii), 416.920(a)(4)(ii).

If Plaintiff does not have a severe impairment or combination of impairments, the disability claim is denied.  If the impairment is severe, the evaluation proceeds to the third step, which compares Plaintiff's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); 20 C.F.R. § 404 Subpt. P, App. 1.  If the impairment meets or equals one of the listed impairments, Plaintiff is conclusively presumed to be disabled.  If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds

to the fourth step, which determines whether the impairment prevents Plaintiff from performing work which was performed in the past. If a Plaintiff is able to perform previous work, that Plaintiff is deemed not disabled. 20 C.F.R. §§ 404. 1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, Plaintiff's residual functional capacity ("RFC") assessment is considered. If Plaintiff cannot perform this work, the fifth and final step in the process determines whether Plaintiff is able to perform other work in the national economy in view of Plaintiff's residual functional capacity, age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon Plaintiff to establish a prima facie case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once Plaintiff establishes that a physical or mental impairment prevents the performance of previous work. The burden then shifts, at step five, to the Commissioner to show that: (1) Plaintiff can perform other substantial gainful activity, and (2) a "significant number of jobs exist in the national economy" which Plaintiff can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

Plaintiff has the burden of showing that drug and alcohol addiction ("DAA") is not a contributing material factor to disability. *Ball v. Massanari*, 254 F.3d 817, 823 (9th Cir. 2001). The Social Security Act bars payment of benefits when drug addiction and/or alcoholism is a contributing factor material to a disability claim. 42 U.S.C. §§ 423 (d)(2)(C) and 1382(a)(3)(J); *Sousa v.*

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR AN IMMEDIATE AWARD OF BENEFITS - 4

*Callahan*, 143 F.3d 1240, 1245 (9th Cir. 1998). If there is evidence of DAA and the individual succeeds in proving disability, the Commissioner must determine whether DAA is material to the determination of disability. 20 C.F.R. §§ 404.1535 and 416.935. If the ALJ finds that the claimant is not disabled, then the claimant is not entitled to benefits and there is no need to proceed with the analysis to determine whether DAA is a contributing factor material to disability. However, if the ALJ finds that the claimant is disabled and there is medical evidence of drug addiction or alcoholism, then the ALJ must proceed to determine if the claimant would be disabled if he or she stopped using alcohol or drugs. *Bustamante v. Massanari*, 262 F.3d 949 (9th Cir. 2001).

## STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). "The [Commissioner's] determination that a plaintiff is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (*citing* 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan,* 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988). Substantial evidence "means such evidence as a reasonable mind might

accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989)(*quoting Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner* v. *Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

**ADMINISTRATIVE DECISION**

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity during the relevant time. (Tr. 23.) At step two, he found Plaintiff had severe impairments of history of Langerhans cell histiocytosis (LCH), methamphetamine dependence, methamphetamine-induced mood disorder, diabetes insipidus, attention

deficit hyperactivity disorder, and nicotine abuse. (Tr. 23.) At step three, he determined these impairments did not meet the requirements of any Listed impairments. (Tr. 23.) He found Plaintiff less than completely credible. (Tr. 26-27.) The ALJ found that when substance abuse is included, Plaintiff is disabled because she is "unable to meet the demands of even sedentary work on a regular and continuing basis." (Tr. 25.) The ALJ included in his RFC "unpredictable absences 2 or more days per month." (Tr. 24.) He found that if substance abuse stops, Plaintiff has the RFC for the full range of unskilled sedentary work. (Tr. 29.) At step four, the ALJ found that because Plaintiff has no past relevant work, she is unable to perform it. At step five, applying Medical Vocational Rule 201.24, the ALJ found that without substance abuse, there is work Plaintiff can perform resulting in a finding of "not disabled" within the meaning of the Social Security Act. (Tr. 29.) The ALJ determined that substance abuse is a contributing factor material to determining Plaintiff's disability. (Tr. 29.) The ALJ found Plaintiff was, therefore, not eligible for benefits. (Tr. 29.)

**ISSUES**

The question is whether the ALJ's decision is supported by substantial evidence and free of legal error. Plaintiff argues the ALJ erred in weighing the medical evidence and in relying on the Medical Vocational Guidelines (Grids) at step five. (Ct. Rec. 14 at 14.) The Commissioner responds that the ALJ properly weighed the medical evidence and his decision is free of legal error, including his step five analysis. (Ct. Rec. 16 at 19-20.)

**DISCUSSION**

**A.   Weighing Medical Evidence**

Plaintiff argues that the ALJ erred by failing to properly credit the opinions of treating physicians family practitioner Ray FitzSimmons, M.D., oncologist Craig Nichols, M.D., and psychiatrist Kimberly Humann, M.D.  (Ct. Rec. 14 at 16-19.) The Commissioner responds that the ALJ gave specific and legitimate reasons, supported by substantial evidence, for rejecting some of these opinions.  (Ct. Rec. 16 at 12-16.)

On September 17, 2003, Dr. FitzSimmons assessed marked impairment caused by LCH, moderate to marked impairment caused by pulmonary fibrosis, and mild impairment due to diabetes insipididus. (Tr. 220.)  He estimated that Plaintiff will be unable to work at least half-time in a normal setting "probably forever," and opined that treatment is unlikely to restore Plaintiff's ability to work at least half-time.   (Id.)   Dr. FitzSimmons opined that Plaintiff "certainly qualifies for" disability benefits and suspected she needed help with substance abuse treatment.  (Tr. 220, 223.)

Over a year later, on November 19, 2004, Dr. FitzSimmons opined that LCH and pulmonary fibrosis caused marked impairment; diabetes insipidus, moderate impairment.  (Tr. 378.)  He did not recommend substance abuse treatment.  (Tr. 379.)  Dr. FitzSimmons estimated that Plaintiff's limitations were "life long" and she is not employable.   (*Id.*)   He opined Plaintiff "has a very serious disabling disease which is destroying her lungs." (*Id.*) About nineteen months later, on June 14, 2006, Dr. FitzSimmons again opined that Plaintiff is not employable.  (Tr. 397.)

The ALJ observed that Dr. FitzSimmons, among other treating

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND REMANDING FOR AN IMMEDIATE AWARD OF BENEFITS - 8

physicians, opined Plaintiff "is incapable of meeting the demands of competitive work on a regular and continuing basis." (Tr. 25.) The ALJ noted that these assessments are consistent with Plaintiff's functioning while using drugs "and are given significant weight." (*Id.*) As noted, the ALJ found Plaintiff disabled when substance abuse is included. (Tr. 23-24.)

Dr. Humann evaluated Plaintiff on February 16, 2006.[1] (Tr. 389.) Plaintiff stated she had been substance-free for 90 days. She was organizing AA groups, attending church about four times a week, and attending a weekly recovery group. (Tr. 389.) Plaintiff described long-term problems with impulsivity. The group leader in at Plaintiff's weekly treatment group described Plaintiff as quite restless and often interrupting others. (Tr. 389.) Plaintiff was awaiting a second round of chemotherapy. (Tr. 390.) Dr. Humann initially assessed attention deficit hyperactivity disorder (ADHD) and amphetamine dependence, with a GAF of 55.[2] (Tr. 391.) She prescribed medication for ADHD. (*Id.*)

About three years later, treating psychiatrist Dr. Humann's April 20, 2006, opinion stated:

---

[1] Dr. Humann points out that Plaintiff began treatment at her clinic in September of 2003. (Tr. 406.)

[2] A Global Assessment of Functioning (GAF) of 55 indicates moderate symptoms (*e.g.*, flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational or school functioning (*e.g.*, few friends, conflicts with peers or co-workers. DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, 4th Ed., (DSM-IV), at 32.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND REMANDING FOR AN IMMEDIATE AWARD OF BENEFITS - 9

> She is continuing to be active in her church and active in her recovery group. . . .
>
> . . . Psychomotor excited fidgety.  Mood depressed. Affect not congruent with stated mood.  Bright, superficial; however, at one point she did become more serious and almost tearful.  Thought process tangential. At times is difficult to follow.

(Tr. 388.)  Dr. Humann diagnosed methamphetamine-induced mood disorder and attention deficit disorder.  She assessed a current GAF of 50, prescribed an antidepressant, and authorized psychotherapy. (Tr. 388.)  Six months later Dr. Humann opined that Plaintiff was unable to meet competitive work standards in seven areas, including maintaining regular attendance and dealing with normal stress.  (Tr. 464.)

The ALJ pointed out Dr. Humann opined Plaintiff is incapable of meeting the demands of competitive work on a regular and continuing basis, an assessment consistent with Plaintiff's functioning while using drugs.  (Tr. 25.)

On October 19, 2006, treating oncologist Craig Nichols, M.D., opined Plaintiff is limited to less than sedentary work as a result of poor pulmonary function, chest pain and obesity.  (Tr. 460-463.) The ALJ noted Dr. Nichols's opinion is consistent with Plaintiff's functioning while using drugs; the opinion was given significant weight.  (Tr. 25.)

The ALJ found that if Plaintiff stopped abusing substances, she would have the RFC to lift ten pounds, stand and walk two hours out of eight and sit at least six hours out of eight.  Plaintiff's psychological impairments were found to limit her to unskilled work. (Tr. 26.)

Despite the ALJ's statement that he gave Dr. FitzSimmons's

opinion significant weight (Tr. 25), he also opined:

> As for the opinion evidence, Ray FitzSimmons, M.D., a treating physician, opined in May 2003 the claimant could not participate in employment readiness classes, job search, or employment (Exhibit 6F-55). *In September 2003 he opined that claimant was capable of sedentary work on at least a half-time basis (Exhibit 6F-58).*[3]  In November 2004 he opined she was not employable (Exhibit 9F-191-196).  He again opined she was unemployable in June 2006 due to progressive lung disease (Exhibit 11F-216).  The assessments of Dr. FitzSimmons appear designed to advocate for the claimant in order for her to receive medical or other benefits.  They are in conflict with the treatment records of Dr. Nichols, a specialist who has treated the claimant's lung disease and has repeatedly described her condition as stable.  The opinion of Dr. FitzSimmons is given little weight.

(Tr. 27-28.)  (Emphasis added.)

As indicated, Dr. Nichols opined in October of 2006 that Plaintiff has the RFC for less than sedentary work – meaning she is disabled.  (Tr. 460-463.)  The ALJ erred by finding Dr. FitzSimmons's opinion in conflict with that of Dr. Nichols, because the finding is not supported by the record.  The ALJ's rejection of Dr. FitzSimmons's opinion as "advocacy" for his patient is not supported by the record.

The ALJ found Dr. Nichol's RFC consistent with Plaintiff's functioning when using drugs but "not otherwise supported by his treatment records." (Tr. 28.)  The ALJ's sole reason for rejecting Dr. Nichols's October 2006 opinion is a perceived inconsistency between the opinion and treatment notes using the "Eastern

---

[3] The ALJ did not indicate that in his September 17, 2003, opinion, Dr. FitzSimmons opined Plaintiff would be unable to perform at least half-time in a normal day-to-day work setting "probably forever."  (Exhibit 6F-58 at Tr. 221.)

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND REMANDING FOR AN IMMEDIATE AWARD OF BENEFITS - 11

Cooperative Oncology Group Performance Status scale" in treatment notes dated (1) May, August and September 2000; (2) February, March and October 2001; (3) January, February and October 2002; (4) June and July 2003; (5) March and April 2004; (6) January, March, May and June 2005; and (7) February, May and June 2006. (Tr. 28.) The ALJ opines that on each of these dates, Dr. Nichols assessed a performance status of between 0 and 1, meaning an individual who at most is restricted from physically strenuous activity but ambulatory and able to carry out work of a light "or sedentary nature, e.g., light house work, office work." (Tr. 28, referring to Exhibits 7F, 8F, and 15F.)

It is difficult to see how the ALJ determined that Dr. Nichols's perceived inconsistencies supported finding Plaintiff disabled when using substances but able to work when substance free. The ALJ's sole reason for discounting Dr. Nichols's October 2006 opinion is not clear and convincing.

With respect to Dr. Humann's opinion, the ALJ notes that in August of 2006, she opined Plaintiff was unable to work full time because she has great difficulty staying focused, working with others, and dealing with authority figures; when under stress, Plaintiff was likely to have a relapse in symptoms, and, when coupled with her physical illness, it was unlikely Plaintiff would be able to hold a job. (Tr. 28, referring to Tr. 406-407.) The ALJ observed that in October of 2006, Dr. Humann opined Plaintiff is unable to maintain attention for two-hour segments, work in coordination with or in proximity to others, complete a normal workday or workweek, accept instructions from supervisors, get along with co-workers, and deal with normal work stress. (Tr. 28,

referring to Tr. 464.) The ALJ summarily rejected Dr. Humann's conclusions, stating: "Dr. Humann's conclusion the claimant is unlikely to hold a job addresses the claimant's physical condition and vocational issues of which she has no expertise. It is given little weight in assessing the claimant's functioning in the absence of drug use." (Tr. 28.)

The only evidence relied on by the ALJ to determine that Plaintiff is not disabled when substance-free is her "active lifestyle," described as the ability to attend church services and bible studies four times a week, organize an AA group, and attend treatment--all for an unspecified period of time. (Tr. 28, referring to Exhibit 10F-201.) While it is well-established that the nature of daily activities may be considered when evaluating credibility (and exertion levels), many home activities are not transferable to the "more grueling" environment of the workplace, where it might be impossible to rest or take medication. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 19890). Similarly, an ability to attend self-help groups and treatment several times weekly does not clearly translate to the ability to function adequately in the "more grueling" environment of the workplace, particularly when the treating psychiatrist opines that Plaintiff's psychological impairments render her unable to maintain full-time employment.

While the ALJ purports to reject Dr. Humann's opinion because it "addresses the claimant's physical condition and vocational issues of which she has no expertise" (Tr. 28), Dr. Humann clearly opined in August of 2006: "Ms. Miner's mental disorders limit her ability to fully participate in work related activities at this time." (Tr. 466.) As indicated, Dr. Humann assessed a GAF of 55

and noted psychological impairment when Plaintiff had been free of substance abuse for 90 days.

The ALJ fails to adequately reject treating psychiatrist Dr. Humann's assessed moderate and marked limitations. The RFC for unskilled work does not adequately address vocational limitations in the ability to deal with normal work stress, to complete a normal work day or work week, or to maintain attention for two-hour segments, issues well within Dr. Humann's expertise. To the extent the ALJ rejected these limitations as inconsistent with Plaintiff's functioning when drug free, the reason is not supported by the record.

**B.    Remand**

There are two remedies where the ALJ fails to provide adequate reasons for rejecting the opinions of a treating or examining psychologist or physician. The general rule, found in the *Lester* line of cases, is that "we credit that opinion as a matter of law." *Lester,* 81 F.3d at 834; *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990); *Hammock v. Bowen*, 879 F.2d 498, 502 (9th Cir. 1989). Under the alternate approach found in *McAllister*, *supra,* a court may remand to allow the ALJ to provide the requisite specific and legitimate reasons for disregarding the opinion. *See also Benecke*, 379 F.3d at 594 (court has flexibility in crediting testimony if substantial questions remain as to claimant's credibility and other issues). Where evidence has been identified that may be a basis for a finding, but the findings are not articulated, remand is the proper disposition. *Salvador v. Sullivan*, 917 F.2d 13, 15 (9th Cir. 1990)(*citing McAllister*); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1202 (9th Cir. 1990).

All of Plaintiff's treating physicians opine that she is unable to maintain full-time employment. The record does not support the ALJ's finding that when substance abuse is excluded, Plaintiff is able to maintain competitive employment. Accordingly, remand will only serve to delay the receipt of benefits.

**CONCLUSION**

The ALJ's RFC is not supported by substantial evidence and free of legal error. The ALJ's reasons for rejecting the opinions of all of Plaintiff's treating physicians are not based on substantial evidence and are not free of legal error. Accordingly,

**IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment **(Ct. Rec. 13)** is **GRANTED**. The matter is **remanded** to the Commissioner for an immediate award of benefits.

2. Defendant's Motion for Summary Judgment **(Ct. Rec. 15)** is **DENIED.**

3. An application for attorney fees may be filed by separate motion.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. Judgment shall be entered for Plaintiff and the file shall be **CLOSED**.

DATED August 4, 2008.

                S/ CYNTHIA IMBROGNO
                UNITED STATES MAGISTRATE JUDGE